The Honorable Mary Jo Heston
Chapter 7
Location: Tacoma

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re<br><br>HEATHER STEWART,<br><br>　　　　　　　　　　　Debtors. | No. 17-41711<br><br>*EX PARTE* APPLICATION FOR APPOINTMENT OF REAL ESTATE AGENT |

COMES NOW the Trustee, Kathryn A. Ellis, and states as follows:

1. Among the assets of the bankruptcy estate is the debtor's interest in certain real property located at 8305 Cirque Dr W #5, University Place, WA.

2. The Trustee believes that it is in the best interest of the estate and of the creditors of the estate to sell this asset.

3. The Trustee further believes that it is in the best interest of the estate, pursuant to 11 U.S.C. § 327, to hire Robin Tomazic and RE/MAX Metro Realty Inc. as the real estate agent and broker to sell this property.

4. Robin Tomazic and RE/MAX Metro Realty Inc. are requesting a six percent (6%) commission of the sale price, to be divided as set forth in the listing agreement attached hereto. If no sale is approved, there will be no commission paid. However, if the listing agent obtains a ready, willing and able buyer to purchase the property on the terms in this listing agreement, and for other reasons the sale is not approved by the Court, the Trustee may seek compensation for the agent, pursuant to the terms of the listing agreement.

5. The named real estate agent has no interest adverse to this estate. Based upon the

*EX PARTE* **APPLICATION FOR APPOINTMENT OF REAL ESTATE AGENT - 1**

KATHRYN A. ELLIS, ESQ.
5506 6th Ave S
Suite 207
Seattle, WA 98108
(206) 682-5002

Declaration of Disinterest submitted herewith, the Trustee is aware of no connections between Robin Tomazic or RE/MAX Metro Realty Inc. and the debtor, creditors, any party in interest, their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee.

6. A copy of the listing agreement is attached hereto and incorporated herein by this reference. Upon approval of this application, the Trustee will sign the attached listing agreement.

No notice to creditors of this application is necessary pursuant to 11 U.S.C. § 102 (1) and Bankruptcy Rule 2002.

WHEREFORE, the Trustee applies for authority to employ the named realtor to sell the above-mentioned property.

DATED this 20th day of November, 2017.

        /s/ Kathryn A. Ellis
        Kathryn A. Ellis, Trustee

The undersigned declares under the penalty of perjury that he provided the Office of the United States Trustee with a copy of this Application, Declaration of Disinterest and proposed order pursuant to LBR 2014-1 (b) and has received authorization from the Office of the United States Trustee to file the same.

DATED this 21st day of November, 2017 at Seattle, Washington.

        /s/ Christopher Williams
        Christopher Williams
        Assistant to Kathryn A. Ellis

C:\Shared\KAE\Dox\TRUSTEE\HStewart\Tomazic_app.wpd

*EX PARTE* **APPLICATION FOR APPOINTMENT OF REAL ESTATE AGENT - 2**

KATHRYN A. ELLIS, ESQ.
5506 6th Ave S
Suite 207
Seattle, WA 98108
(206) 682-5002

Form 1A  
Exclusive Sale  
Rev. 7/15  
Page 1 of 2

©Copyright 2015  
Northwest Multiple Listing Service  
ALL RIGHTS RESERVED

# EXCLUSIVE SALE AND LISTING AGREEMENT

__Kathryn A. Ellis, Chapt. 7 Bankruptcy__  __Trustee for Stewart__ ("Seller") hereby grants to, 1
Seller                                                                                       Seller

__RE/MAX Metro Realty Inc.__ ("Firm") from date hereof until midnight of 2

_____ ("Listing Term"), the exclusive right to sell the real property ("the Property") 3

commonly known as __8305 Cirque Dr W #5__ , City __University Place__ , 4

County __Pierce__ , WA, Zip __98467__ ; and legally described on Exhibit A. 5

1. **DEFINITIONS.** For purposes of this Agreement: (a) "MLS" means the Northwest Multiple Listing Service; and (b) "sell" 6
   includes a contract to sell; an exchange or contract to exchange; an option to purchase; and/or a lease with option to 7
   purchase. 8

2. **AGENCY/DUAL AGENCY.** Seller authorizes Firm to appoint _____ __Robin Tomazic__ _____ 9
   as Seller's Listing Broker. This Agreement creates an agency relationship with Listing Broker and any of Firm's brokers 10
   who supervise Listing Broker's performance as Seller's agent ("Supervising Broker"). No other brokers affiliated with 11
   Firm are agents of Seller, except to the extent that Firm, in its discretion, appoints other brokers to act on Seller's behalf 12
   as and when needed. If the Property is sold to a buyer represented by one of Firm's brokers other than Listing Broker 13
   ("Buyer's Broker"), Seller consents to any Supervising Broker, who also supervises Buyer's Broker, acting as a dual 14
   agent. If the Property is sold to a buyer who Listing Broker also represents, Seller consents to Listing Broker and 15
   Supervising Broker acting as dual agents. If any of Firm's brokers act as a dual agent, Firm shall be entitled to the entire 16
   commission payable under this Agreement plus any additional compensation Firm may have negotiated with the buyer. 17
   Seller acknowledges receipt of the pamphlet entitled "The Law of Real Estate Agency." 18

3. **LIST DATE.** Firm shall submit this listing, including the Property information on the attached pages and photographs of 19
   the Property (collectively, "Listing Data"), to be published by MLS by 5:00 p.m. on _____ ("List Date"), 20
   which date shall not be more than 30 days from the effective date of the Agreement. Seller acknowledges that exposure 21
   of the Property to the open market through MLS will increase the likelihood that Seller will receive fair market value for 22
   the Property. Accordingly, prior to the List Date, Firm and Seller shall not promote or advertise the Property in any 23
   manner whatsoever, including, but not limited to yard or other signs, flyers, websites, e-mails, texts, mailers, magazines, 24
   newspapers, open houses, previews, showings, or tours. 25

4. **COMMISSION.** If during the Listing Term (a) Seller sells the Property and the buyer does not terminate the agreement 26
   prior to closing; or (b) after reasonable exposure of the Property to the market, Firm procures a buyer who is ready, 27
   willing, and able to purchase the Property on the terms in this Agreement, Seller will pay Firm a commission of (fill in 28
   one and strike the other) __6__ % of the sales price, or $ _____ ("Total Commission"). From the 29
   Total Commission, Firm will offer a cooperating member of MLS representing a buyer ("Selling Firm") a commission of 30
   (fill in one and strike the other) __2.5__ % of the sales price, or $ _____ . Further, if Seller shall, within 31
   six months after the expiration of the Listing Term, sell the Property to any person to whose attention it was brought 32
   through the signs, advertising or other action of Firm, or on information secured directly or indirectly from or through 33
   Firm, during the Listing Term, Seller will pay Firm the above commission. Provided, that if Seller pays a commission to a 34
   member of MLS or a cooperating MLS in conjunction with a sale, the amount of commission payable to Firm shall be 35
   reduced by the amount paid to such other member(s). Provided further, that if Seller cancels this Agreement without 36
   legal cause, Seller may be liable for damages incurred by Firm as a result of such cancellation, regardless of whether 37
   Seller pays a commission to another MLS member. Selling Firm is an intended third party beneficiary of this Agreement. 38

5. **SHORT SALE / NO DISTRESSED HOME CONVEYANCE.** If the proceeds from the sale of the Property are insufficient 39
   to cover the Seller's costs at closing, Seller acknowledges that the decision by any beneficiary or mortgagee, or its 40
   assignees, to release its interest in the Property, for less than the amount owed, does not automatically relieve Seller of 41
   the obligation to pay any debt or costs remaining at closing, including fees such as Firm's commission. Firm will not 42
   represent or assist Seller in a transaction that is a "Distressed Home Conveyance" as defined by Chapter 61.34 RCW 43
   unless otherwise agreed in writing. A "Distressed Home Conveyance" is a transaction where a buyer purchases 44
   property from a "Distressed Homeowner" (defined by Chapter 61.34 RCW), allows the Distressed Homeowner to 45
   continue to occupy the property, and promises to convey the property back to the Distressed Homeowner or promises 46
   the Distressed Homeowner an interest in, or portion of, the proceeds from a resale of the property. 47

6. **KEYBOX.** Firm is authorized to install a keybox on the Property. Such keybox may be opened by a master key held by 48
   members of MLS and their brokers. A master key also may be held by affiliated third parties such as inspectors and 49
   appraisers who cannot have access to the Property without Firm's prior approval which will not be given without Firm 50
   first making reasonable efforts to obtain Seller's approval. 51

_____  _____  _____  _____
Seller's Initials    Date    Seller's Initials    Date

Form 1A
Exclusive Sale
Rev. 7/15
Page 2 of 2

**EXCLUSIVE SALE AND LISTING AGREEMENT**
*Continued*

©Copyright 2015
Northwest Multiple Listing Service
ALL RIGHTS RESERVED

7. **SELLER'S WARRANTIES AND REPRESENTATIONS.** Seller warrants that Seller has the right to sell the Property on the terms herein and that the Property information on the attached pages to this Agreement is correct. Further, Seller represents that to the best of Seller's knowledge, there are no structures or boundary indicators that either encroach on adjacent property or on the Property. Seller authorizes Firm to provide the information in this Agreement and the attached pages to prospective buyers and to other cooperating members of MLS who do not represent the Seller and, in some instances, may represent the buyer. If Seller provides Firm with any photographs of the Property, Seller warrants that Seller has the necessary rights in the photographs to allow Firm to use them as contemplated by this Agreement. Seller agrees to indemnify and hold Firm and other members of MLS harmless in the event the foregoing warranties and representations are incorrect.

8. **CLOSING.** Seller shall furnish and pay for a buyer's policy of title insurance showing marketable title to the Property. Seller shall pay real estate excise tax and one-half of any escrow fees or such portion of escrow fees and any other fees or charges as provided by law in the case of a FHA or VA financed sale. Rent, taxes, interest, reserves, assumed encumbrances, homeowner fees and insurance are to be prorated between Seller and the buyer as of the date of closing. Seller shall prepare and execute a certification (NWMLS Form 22E or equivalent) under the Foreign Investment in Real Property Tax Act ("FIRPTA") at closing. If Seller is a foreign person or entity, and the sale is not otherwise exempt from FIRPTA, Seller acknowledges that a percentage of the amount realized from the sale will be withheld for payment to the Internal Revenue Service.

9. **MULTIPLE LISTING SERVICE.** Seller authorizes Firm and MLS to publish the Listing Data and distribute it to other members of MLS and their affiliates and third parties for public display and other purposes. This authorization shall survive the termination of this Agreement. Firm is authorized to report the sale of the Property (including price and all terms) to MLS and to its members, financial institutions, appraisers, and others related to the sale. Firm may refer this listing to any other cooperating multiple listing service at Firm's discretion. Firm shall cooperate with all other members of MLS, or of a multiple listing service to which this listing is referred, in working toward the sale of the Property. Regardless of whether a cooperating MLS member is the agent of the buyer, Seller, neither or both, such member shall be entitled to receive the selling firm's share of the commission. MLS is an intended third party beneficiary of this agreement and will provide the Listing Data to its members and their affiliates and third parties, without verification and without assuming any responsibility with respect to this agreement.

10. **PROPERTY CONDITION AND INSURANCE.** Neither Firm, MLS, nor any members of MLS or of any multiple listing service to which this listing is referred shall be responsible for loss, theft, or damage of any nature or kind whatsoever to the Property, any personal property therein, or any personal injury resulting from the condition of the Property, including entry by the master key to the keybox and/or at open houses. Seller is advised to notify Seller's insurance company that the Property is listed for sale and ascertain that the Seller has adequate insurance coverage. If the Property is to be vacant during all or part of the Listing Term, Seller should request that a "vacancy clause" be added to Seller's insurance policy. Seller acknowledges that intercepting or recording conversations of persons in the Property without first obtaining their consent violates RCW 9.73.030.

11. **FIRM'S RIGHT TO MARKET THE PROPERTY.** Seller shall not commit any act which materially impairs Firm's ability to market and sell the Property under the terms of this Agreement. In the event of breach of the foregoing, Seller shall pay Firm a commission in the above amount, or at the above rate applied to the listing price herein, whichever is applicable. Unless otherwise agreed in writing, Firm and other members of MLS shall be entitled to show the Property at all reasonable times. Firm need not submit to Seller any offers to lease, rent, execute an option to purchase, or enter into any agreement other than for immediate sale of the Property.

12. **SELLER DISCLOSURE STATEMENT.** Unless Seller is exempt under RCW 64.06, Seller shall provide to Firm as soon as reasonably practicable a completed and signed "Seller Disclosure Statement" (Form 17 (Residential), Form 17C (Unimproved Residential), or Form 17 Commercial). Seller agrees to indemnify, defend and hold Firm harmless from and against any and all claims that the information Seller provides on Form 17, Form 17C, or Form 17 Commercial is inaccurate.

13. **DAMAGES IN THE EVENT OF BUYER'S BREACH.** In the event Seller retains earnest money as liquidated damages on a buyer's breach, any costs advanced or committed by Firm on Seller's behalf shall be paid therefrom and the balance divided equally between Seller and Firm.

14. **ATTORNEYS' FEES.** In the event either party employs an attorney to enforce any terms of this Agreement and is successful, the other party agrees to pay reasonable attorneys' fees. In the event of trial, the successful party shall be entitled to an award of attorneys' fees and expenses; the amount of the attorneys' fees and expenses shall be fixed by the court. The venue of any suit shall be the county in which the Property is located.

Are the undersigned the sole owner(s)? ❑ YES ❑ NO

_____     _____
Seller's Signature                     Date         Real Estate Firm

_____     _____
Seller's Signature                     Date         Broker's Signature                Date

NWMLS Form 10 Rev. 6/17
Copyright 2017
Northwest Multiple Listing Service
All Rights Reserved

CONDOMINIUM LISTING INPUT SHEET (page 1 of 4)

PROPERTY TYPE 2

• Indicates Required information    ( ) Indicates Maximum Choice    *Indicates "Yes" By Default    LISTING #

## ADDRESS

| Pierce | University Place | 98467 |
|---|---|---|
| • County | • City | • ZIP Code    + 4 |

| 33 | |
|---|---|
| • Area | • Community/District |

| 8305 | – | | Cirque | |
|---|---|---|---|---|
| • Street # (HSN) | Modifier | Direction | • Street Name | |

| Drive | W | 5 |
|---|---|---|
| Suffix | Post Direction    - | Unit # |

## LISTING

| $ 140,000.00 | | | 771400-005-0 | Yes |
|---|---|---|---|---|
| • Listing Price | • Listing Date | • Expiration Date | • Tax ID# | • Preliminary Title Ordered |

• Offers (1)
☑ Seller intends to review offers upon receipt
☐ Seller to review offers on Offer Review Date
(may review/accept sooner)

Offer Review Date
(required if 2nd "Offers" option is selected)

No
FIRPTA withholding required?

## LOCATION

| No | Somerset Place Condo | |
|---|---|---|
| CO-OP | Building/Complex Name | |

| | | Top Map | Side Map |
|---|---|---|---|
| MAP BOOK | Map Page | Coord. | Coord. |

## PROPERTY INFORMATION

| Yes | Yes | Yes | Yes | Yes |
|---|---|---|---|---|
| • Prohibit Blogging | • Allow Automated Valuation | • Show Map Link | • Internet Advertising | • Show Address to Public |

| 2.5 | |
|---|---|
| • SOC (Selling Office Com.) | Selling Office Commission Comments (40 characters maximum) |

| 1975 | 1988 | tax records |
|---|---|---|
| • Year Built | Effective Year Built | Effective Year Built Source |

| 1,010 | | |
|---|---|---|
| • ASF - Total (Square Feet) | Lot Size (Square Feet) | Lot Size Source |

Virtual Tour URL   (Please include http:// )

## BROKER INFORMATION

| 3104 | Robin Tomazic 206-799-9277 | 7008 | RE/MAX Metro Realty 206-322-5700 |
|---|---|---|---|
| • LAG Listing Broker ID# | Broker Name and Phone | Listing Firm - ID# | Firm Name and Phone |

| | | | |
|---|---|---|---|
| Co Broker - ID# | Co Broker Name and Phone | Co Firm - ID# | Co Firm Name and Phone |

INITIALS:
| | | | | | |
|---|---|---|---|---|---|
| Seller | Date | Seller | Date | Broker | Date |

NWMLS Form 10 Rev. 6/17
Copyright 2017
Northwest Multiple Listing Service
All Rights Reserved

CONDOMINIUM LISTING INPUT SHEET (page 2 of 4)

PROPERTY TYPE 2

Listing Address:  LAG # 3104

## LISTING INFORMATION

| Tracie | | HOA Community | 253-985-3812 | |
|---|---|---|---|---|
| Manager's Name | Manager's Phone No. | Assoc. Contact Name | Assoc. Phone No. | Owner Occupancy % |

**• Possession (3)**
- ☐ Closing
- ☐ Negotiable
- ☐ See Remarks
- ☐ Sub.Tenant's Rights

**• Showing Information (10)**
- ☐ Appointment
- ☐ Call Listing Office
- ☐ Day Sleeper
- ☐ Gate Code Needed
- ☐ MLS Keybox
- ☐ Other Keybox
- ☐ Owner-Call First
- ☐ Pet in House
- ☐ Power Off
- ☐ Renter-Call First
- ☐ Security System
- ☐ See Remarks
- ☐ Vacant

**• Potential Terms (10)**
- ☐ Assumable
- ☐ Cash Out
- ☐ Conventional
- ☐ Farm Home Loan
- ☐ FHA
- ☐ Lease/Purchase
- ☐ Owner Financing
- ☐ Rehab Loan
- ☐ See Remarks
- ☐ State Bond
- ☐ VA

| | $ | No | No |
|---|---|---|---|
| • Tax Year | • Annual Taxes | • Senior Exemption | Right of First Refusal |

**• Homeowner Dues Include (6)**
- ☐ Cable TV
- ☐ Central Hot Water
- ☑ Common Area Maintenance
- ☐ Concierge
- ☐ Earthquake Insurance
- ☑ Garbage
- ☑ Lawn Service
- ☐ Road Maintenance
- ☐ Security Services
- ☐ See Remarks
- ☐ Snow Removal
- ☑ Water/Sewer

$ 315.00
• Monthly HO Dues

$ _____
Monthly Rent - if rented

| Exempt | No | $ | |
|---|---|---|---|
| • Form 17 | Special Assessment | Spec. Assessment | Project Approved by FHA |

## SCHOOL & OWNER INFO.

| University Place | Sunset Elementary | | |
|---|---|---|---|
| • School District | Elementary School | Junior High/Middle School | Senior High School |

| undisclosed | | undisclosed | Vacant |
|---|---|---|---|
| • Owner Name | Owner Name 2 | • Owner's Phone | • Occupant Type |

| 000-000-0000 | Seattle, WA | vacant | |
|---|---|---|---|
| • Phone to Show | • Owner's City and State | Occupant's Name | |

• Bank Owned/REO

**• 3rd Party App. Req. (2)**
- ☐ None  ☐ Short Sale
- ☐ Other - See Remarks

• Auction

## SITE INFORMATION

**View (6)**
- ☐ Bay   ☐ Ocean
- ☐ Canal  ☐ Partial
- ☐ City   ☐ River
- ☐ Golf Course  ☐ See Remarks
- ☐ Jetty  ☐ Sound
- ☐ Lake   ☐ Strait
- ☐ Mountain  ☐ Territorial

**Lot Details (7)**
- ☐ Alley  ☐ Paved Street
- ☐ Corner Lot  ☐ Secluded
- ☐ Cul-de-sac  ☐ Sidewalk
- ☐ Curbs
- ☐ Dead End Street
- ☐ High Voltage Line
- ☐ Open Space

**Waterfront (5)**
- ☐ Bank-High  ☐ Lake
- ☐ Bank-Low   ☐ No Bank
- ☐ Bank-Medium ☐ Ocean
- ☐ Bay        ☐ River
- ☐ Bulkhead   ☐ Saltwater
- ☐ Canal      ☐ Sound
- ☐ Creek      ☐ Strait
- ☐ Jetty

**Common Property Features (14)**
- ☐ Age Restriction  ☐ Elevator
- ☐ Athletic Court   ☐ Exercise Room
- ☐ Boat House       ☐ Fire Sprinklers
- ☑ Cable TV         ☐ Game/Rec Rm
- ☐ Club House       ☐ Golf Course
- ☐ Disabled Access  ☐ High Speed Int Avail
- ☐ Hot Tub          ☑ Pool-Outdoor
- ☑ Laundry Room     ☑ RV Parking
- ☐ Lobby Entrance   ☐ Sauna
- ☐ Moorage          ☑ Security Gate
- ☐ Outside Entry    ☐ See Remarks
- ☐ Pool-Indoor      ☑ Trails

**• Parking Type (4)**
- ☐ Carport         ☐ None
- ☐ Common Garage   ☑ Off Street
- ☐ Individual Garage  ☑ Uncovered

| | | 1 | 2 | | 30 |
|---|---|---|---|---|---|
| No. of Assigned Parking Spaces | Parking Space Numbers | Floor No. of Unit | No. of Stories in Building | No. of Units in Building | No. of Units in Complex |

INITIALS: _____   _____   _____   _____   _____   _____
         Seller    Date    Seller    Date    Broker    Date

NWMLS Form 10 Rev. 6/17
Copyright 2017
Northwest Multiple Listing Service
All Rights Reserved

CONDOMINIUM LISTING INPUT SHEET (page 3 of 4)

PROPERTY TYPE 2

Listing Address: _____  LAG # 3104

## BUILDING INFORMATION

**Cats/Dogs (3)**
- ☐ Cats Only
- ☐ Dogs Only
- ☐ No Dogs or Cats
- ☐ No Restrictions
- ☐ See Remarks
- ☑ Subject to Restrictions

**Exterior (4)**
- ☐ Brick
- ☐ Cement Planked
- ☐ Cement/Concrete
- ☐ Log
- ☐ Metal/Vinyl
- ☐ See Remarks
- ☐ Stone
- ☑ Stucco
- ☑ Wood
- ☐ Wood Products

**Roof (3)**
- ☐ Built-up
- ☐ Cedar Shake
- ☑ Composition
- ☐ Flat
- ☐ Green (Living)
- ☐ Metal
- ☐ See Remarks
- ☐ Tile
- ☐ Torch Down

**Number of Access Stairs**: _____

**New Construction**: No

**New Construction State**: _____

**Remodeled/Updated**: _____

**Square Footage Source**: _____

**Architecture**: _____

**Style Code**: 32 - Townhouse

**Storage Location**: _____  **Storage No.**: _____  **Window Coverings**: _____

## GREEN BUILDING INFO

**Green Certification (4)**
- ☐ Built Green™
- ☐ LEED™
- ☐ Northwest ENERGY STAR®
- ☐ Other - See Remarks

**Built Green™**: _____  **LEED™**: _____  **Northwest ENERGY STAR®**: _____

**Construction Methods (2)**
- ☐ Advanced Wall
- ☐ Double Wall
- ☐ Ins. Concrete Form (ICF)
- ☐ Post & Beam
- ☐ Standard Frame
- ☐ Steel & Concrete
- ☐ Strawbale
- ☐ Structural Ins. Panel (SIPs)
- ☐ Tilt-up

**EPS Energy Score (0-99,999kWh)**: _____  **HERS Index Score (0-150)**: _____

## INTERIOR FEATURES

**Leased Equipment**: _____  **Water Heater Type**: _____  **Water Heater Location**: _____

**Energy Source (6)**
- ☑ Electric
- ☐ Geothermal
- ☐ Ground Source
- ☐ Natural Gas
- ☐ Oil
- ☐ Pellet
- ☐ Propane
- ☐ See Remarks
- ☐ Solar (Unspecified)
- ☐ Solar Hot Water
- ☐ Solar PV
- ☐ Wood

**Heating/Cooling (8)**
- ☐ 90%+ High Efficiency
- ☑ Baseboard
- ☐ Central A/C
- ☐ Ductless HP-Mini Split
- ☐ Forced Air
- ☐ Heat Pump
- ☐ HEPA Air Filtration
- ☐ High Efficiency (Unspecified)
- ☐ Hot Water Recirc Pump
- ☐ HRV/ERV System
- ☐ Insert
- ☐ None
- ☐ Other - See Remarks
- ☑ Radiant
- ☐ Radiator
- ☐ Stove/Free Standing
- ☐ Tankless Water Heater
- ☐ Wall
- ☐ Window Unit A/C

**Floor Covering (5)**
- ☐ Bamboo/Cork
- ☑ Ceramic Tile
- ☐ Concrete
- ☐ Fir/Softwood
- ☐ Hardwood
- ☐ Laminate
- ☐ Other Renewable
- ☐ See Remarks
- ☐ Slate
- ☐ Vinyl
- ☐ Wall to Wall Carpet

**Unit Features (11)**
- ☐ Alarm System
- ☐ Balcony/Deck/Patio
- ☐ Central Vacuum
- ☐ Disabled Access
- ☐ End Unit
- ☐ French Doors
- ☐ Ground Floor
- ☐ Insulated Windows
- ☐ Jetted/Soaking Tub
- ☐ Master Bath
- ☐ Penthouse
- ☐ Skylights
- ☐ Top Floor
- ☐ Vaulted Ceilings
- ☐ Walk-in Closet
- ☐ Yard

**Appliance Hookups (6)**
- ☐ Cooking-Electric
- ☐ Cooking-Gas
- ☐ Dryer-Electric
- ☐ Dryer-Gas
- ☐ Ice-Maker
- ☐ Washer

**Appliances That Stay (10)**
- ☐ Dishwasher
- ☐ Double Oven
- ☐ Dryer
- ☐ Garbage Disposal
- ☐ Microwave
- ☐ Range/Oven
- ☐ Refrigerator
- ☐ See Remarks
- ☐ Trash Compactor
- ☐ Washer

**Lower Fireplaces**: _____  **Upper Fireplaces**: _____  **Main Fireplaces**: _____  **Type of Fireplace**: _____

## COMMUNITY INFO

**Bus Line Nearby**: _____  **Bus Route Number**: _____

INITIALS: _____

Seller _____ Date _____ Seller _____ Date _____ Broker _____ Date _____

NWMLS Form 10 Rev. 6/17
Copyright 2017
Northwest Multiple Listing Service
All Rights Reserved

CONDOMINIUM LISTING INPUT SHEET (page 4 of 4)

PROPERTY TYPE 2

Listing Address:

LAG # 3104

### ROOM LOCATION

* Level (1)　U for Upper　M for Main　L for Lower　S for Split　G for Garage

| | | | | | |
|---|---|---|---|---|---|
| Entry | M | Kit w/o Eating Space | | Family Room | |
| Living Room | M | Master Bedroom | | Utility Room | |
| Dining Room | | Bonus Room | | Great Room | |
| Kit with Eating Space | M | Den/Office | | | |

No. of Bedrooms　U 2　M ___　L ___

No. of Full Baths　U 1　M ___　L ___　G ___

No. of ¾ Baths　U ___　M ___　L ___　G ___

No. of ½ Baths　U ___　M 1　L ___　G ___

### REMARKS

**Marketing Remarks.** CAUTION! The comments you make in the following lines are limited to descriptions of the land and improvements only. These remarks will appear in the client handouts and websites. (500)

Two Bedroom / 1.5 Ba Townhome in gated Somerset Place. Lives like a detached home with wood burning fireplace for cozy nights & updated kitchen with ceramic tile floors and radiant floor heat! Master bedroom upstairs has huge closet, attached bath, and private deck overlooking greenbelt. Community features include swimming pool, greenbelt, and RV storage on site. Large storage unit 6x6.

**Confidential Broker-Only Remarks.** Comments in this category are for broker's use only. (250)

Escrow with Law Offices of Wanda Reif Nuxoll. Offers subject to court approval - see attached docs for more details.

* **Driving Directions to Property** (200)

INITIALS: _____　_____　_____
　　　　　　Seller　　　　　Date　　　Seller　　　　　Date　　　Broker　　　　　Date

# Addendum to Exclusive Listing Agreement

**Date: November 15, 2017**
Property: 8305 Cirque Dr W #5, University Place, WA 98467
Seller/Trustee: Kathryn A. Ellis                    Case Number 17-41711
Trustee Phone Number: 206-682-5002
Debtor: Heather Stewart
Listing Firm: RE/MAX Metro Realty Inc.
MLS Office number: 7008
Listing Broker: Robin Tomazic
LAG number: 3104
Firm Address: 2312 Eastlake Ave E, Seattle, WA 98102
Email: Robin@RMTrealestate.com
Phone number: 206-799-9277


This Addendum modifies the Listing Agreement for the listing and property commonly identified above.
1. **Short Sale.** This property may be being sold as a short sale. Any sale is subject to approval of lienholders of record, which approval may be conditioned on modifications to the agreement and/or to the listing agreement. The Bankruptcy Trustee has no control over lienholder approval and cannot guarantee that any offer will be accepted.
2. **Bankruptcy Sale.** This property is being sold by the Bankruptcy Trustee in a pending bankruptcy case. The Bankruptcy Trustee does not own the Property or have the right to sell the Property without the approval of the Bankruptcy Court, which approval may be conditioned on modifications to the agreement and/or to the listing agreement. The Bankruptcy Trustee has no control over court approval and cannot guarantee that any offer will be accepted. All sales are contingent upon Bankruptcy Court approval.
3. **Knowledge and Warranties Regarding Property.** The Bankruptcy Trustee has no personal knowledge of the Property, and expressly disclaims all warranties that any information provided in this listing is accurate or complete. All sales shall be as-is with no warranties of any kind. Buyer will be required to fully investigate all aspects of the Property to Buyer's satisfaction.
4. **Deed.** Title shall be conveyed by a Trustee's Quitclaim Deed free and clear of liens and interests, pursuant to court order. The Bankruptcy Trustee makes no warranties or representations of any kind with respect to title and shall assume no liabilities concerning the Property after closing.
5. **Commissions.** If the commission is reduced by the court or a lienholder as a condition to approval, then the reduction of the commission shall be determined pursuant to NWMLS Rules. For purposes of this paragraph, commission modifications imposed by the Court shall be treated that same as modifications imposed by creditors.
6. **Delayed Listing and Listing Price.** RE/MAX Metro Realty Inc. will conduct or contract an appraisal, broker price opinion, or comparative market analysis on the above mentioned property. Upon completion, the listing price shall be established and the Bankruptcy Trustee authorizes RE/MAX Metro Realty Inc. to continue to adjust the listing price at RE/Max Metro Realty Inc.'s discretion without further notice until an acceptable purchase offer is received unless otherwise expressly notified in writing. Additionally, it will be necessary to coordinate with any existing occupant(s) of the property prior to listing the property. The Bankruptcy Trustee authorizes RE/MAX Metro Realty Inc. to delay listing the

property with the multiple listing service(s) until the valuation and coordination with occupants is complete.

7. **Seller Info Undisclosed.** In consideration that the Bankruptcy Trustee is not a homeowner Seller, Seller requests that Seller's name and phone number be omitted from the information included in the Property's listing and shall not be made available to other real estate Brokers.

8. **Presentation to Listing Firm.** In consideration that the Bankruptcy Trustee is not a homeowner Seller, Seller requests that all offers only be presented to or through the Listing Firm and only offers which have Been deemed acceptable for mutual acceptance at the discretion of RE/MAX Metro Realty Inc. shall be presented to the Seller.

9. **Bankruptcy Trustee Carve Out/Buyer's Premium.** To obtain Bankruptcy Court approval of this transaction, Seller will have to show that the sale will provide a benefit to the unsecured creditors in the Case. The amount of the Bankruptcy Trustee Carve Out/Buyer's Premium shall be calculated based on the Purchase Price as follows: 25% of the first $5,000 or less, 10% of any amount in excess of $5,000 but not in excess of $50,000, 5% of any amount in excess of $50,000 but not in excess of $1,000,000, and 3% of any amounts in excess of $1,000,000; the sum of which shall be no less than $___20,000_____. This fee shall be paid by the Buyer at closing. The Buyer's Premium shall be paid in cash at closing and is in addition to the Purchase Price. These fees shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

10. **Bankruptcy Court Filing Fee.** Buyer shall be responsible for paying the Bankruptcy Court Filing Fee. If paid by the buyer, the check shall be delivered to the Bk Trustee's office not later than 2 business days after mutual acceptance of this Agreement. Buyer acknowledges and agrees to pay the sum of $181 as a non-refundable fee to the United States Bankruptcy Court for the Bankruptcy Trustee's filing of a motion to approve sale free and clear of liens. In the event that the sale closes, Buyer shall be entitled to credit at closing for the fee. In the event that this sale does not close, for whatever reason, the fee shall be considered non-refundable and shall not be credited or repaid to the Buyer. If the sale closes, the Bankruptcy Trustee agrees to credit the Buyer the amount of the fee from proceeds of the Bankruptcy Trustee Carve Out/Buyer's Premium at closing.

10. **Offers.** All purchase and sale agreements are subject to approval of the Bankruptcy Court. The Trustee will apply to the Bankruptcy Court for approval of the sale set forth herein as soon as reasonably practicable. If the Trustee receives a better offer on the property prior to the court hearing, the Trustee may accept such offer contingent upon approval of the court and request that the court accept the better offer. This clause is an explanation of the law and removal of this clause from the agreement will not change the law. The Trustee agrees, however, to follow the procedures set forth in the next paragraph allowing the Buyer(s) to attempt to match a competing offer.

11. **Competing Offers.** The Trustee agrees to notify Buyer regarding any other competing offers received, and provide a copy of the same to Buyer or Buyer's Agent upon receipt of the competing offer. Buyer has the right to participate in any 'bidding' process at that time or at the time of the Court Hearing to approve this Sale.

Seller _____Kathryn A. Ellis, Trustee        Broker_____ Robin Tomazic